**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1011n.06

No. 11-1689

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Sep 14, 2012*

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEVEN SCOZZARI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| JEREMY MCGRAW and | ) | |
| DEWAYNE MIEDZIANOWSKI, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: GIBBONS, ROGERS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Steven Scozzari, the brother and personal representative of the estate of decedent William Scozzari, filed suit against police officers Jeremy McGraw and Dewayne Miedzianowski under 42 U.S.C. § 1983, alleging illegal detention, unreasonable seizure, and excessive force against William Scozzari, all in violation of the Fourth Amendment. The district court dismissed the suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. We affirm.

**I.**

Our examination of the district court's Rule 12(b)(6) dismissal begins with a recitation of the facts alleged in the complaint.[1] William Scozzari ("Scozzari"), a diagnosed schizophrenic, lived in

---

[1]Confusingly, the complaint repeatedly refers to what officers Miedzianowski and McGraw claim occurred, and it is not always clear whether the complaint intends to adopt the officers' claims

-1-

a cabin at the Lone Pine Motel in Clare, Michigan. Just after 11:00 p.m. on September 18, 2007, police received a 911 call that shots had been fired in the area of a lake north of the Lone Pine Motel. Clare Chief of Police Dewayne Miedzianowski arrived within minutes of the 911 call; Officer Jeremy McGraw came shortly after.

When Miedzianowski arrived on the scene, he encountered Scozzari standing about ten or fifteen feet away and carrying a stick. According to Miedzianowski, he asked Scozzari to drop the stick in order to talk to him, but Scozzari responded, "Fuck you," numerous times, kept walking, and then drew the stick back. Contrary to Miedzianowski's account, all other witnesses indicated that Scozzari never verbally responded to any commands from Miedzianowski.

According to Miedzianowski, he was about ten feet away when Scozzari drew the stick back. Miedzianowski ran around a truck, yelling at Scozzari to drop the stick; Scozzari did not follow him. Miedzianowski then drew his pepper spray, again yelling at Scozzari to drop the stick. The complaint admits that Scozzari "did not drop [the stick], but came down with it" and began reaching to his waist with his right hand. Miedzianowski saw what he believed to be a knife in Scozzari's waistband. Miedzianowski claims to have fired his pepper spray at Scozzari, later indicating in his police report that he believed he had hit Scozzari with pepper spray. However, "there [was] no indication that Scozzari reacted in any way consistent[] with being pepper sprayed." Further, no witnesses in proximity to Scozzari ever reported that they smelled the distinctive scent of pepper

or whether it seeks to allege a different version of events. Although it is necessary to include some of the allegations about the officers' claims to give a complete account of the complaint's allegations, we have evaluated the sufficiency of the complaint based on allegations clearly asserted as plaintiff's claims.

spray. Miedzianowski claims that he then drew his weapon, pointed it at Scozzari, and yelled at him

to put the knife back. Scozzari turned around and walked into his cabin, "breaking off the incident

and closing the door."

McGraw arrived a few minutes later and Miedzianowski briefed him. After conducting a

brief investigation in the area about the shots-fired complaint, the two officers turned their attention

to Scozzari's cabin. McGraw pounded on the cabin door, shouting, "Open Up" and "Police," and

one of the officers stood with his taser at the ready. McGraw also "kicked [the door] in order to push

it open to see what Scozzari was doing inside." Scozzari then opened the door and, according to

McGraw, had weapons in his hands. The complaint does not give a further account of events, but

the officers subsequently shot and killed Scozzari. *Scozzari v. Miedzianowski*, 454 F. App'x 455,

458–60 (6th Cir. 2012). The complaint in this case and this appeal concern only the events that

occurred prior to Scozzari's shooting.[2]

On September 16, 2010, Steven Scozzari ("Appellant"), as personal representative of his

deceased brother, brought suit in federal court against Miedzianowski and McGraw pursuant to 42

U.S.C. § 1983. He alleged (1) illegal detention and unreasonable seizures in initially confronting

---

[2]The present appeal results from the second complaint filed by Scozzari's brother arising from the shooting death of Scozzari. The first complaint included claims of excessive force and deliberate indifference, municipal liability, assault and battery, and gross negligence, conspiracy to violate Scozzari's civil rights, and discrimination under the Americans with Disabilities Act. *Scozzari*, 454 F. App'x at 460. We recently affirmed the denial of qualified immunity for the defendants on the constitutional claims. *Id.* at 468. An attempt to amend the first complaint to include the claims asserted here—two Fourth Amendment violations based on events that took place prior to Scozzari's shooting—was unsuccessful, and thus Scozzari's brother filed this second complaint to encompass these claims.

Scozzari and then seeking to enter the cabin or force Scozzari out and (2) excessive force in the use of pepper spray, both in violation of the Fourth Amendment. The district court subsequently granted Miedzianowski and McGraw's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court found that, based on the allegations in the complaint, Scozzari was not seized because he "did not acquiesce" and "did not submit in any realistic sense to Miedzianowski's show of authority" when Miedzianowski instructed him to put down the stick and used pepper spray on him. And without a seizure, there could be no illegal detention. The district court also found that the "attempt" by the officers to enter the cabin did not constitute a seizure because "[a]lthough Scozzari opened the door, there is no allegation that he exited his home to submit to Defendants' show of authority or force, or that the officers entered his home to effectuate an arrest." Finally, the district court also dismissed the excessive force claim because, according to the complaint, Scozzari did not suffer any physical or emotional injury.

## II.

We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss. *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012). To survive a motion to dismiss, Scozzari "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie*, 673 F.3d at 492.

**III.**

Appellant brought suit on behalf of his late brother under 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Appellant's complaint is rooted in the Fourth Amendment, which protects against unreasonable seizures. *California v. Hodari D.*, 499 U.S. 621, 624 (1991). A plaintiff alleging a Fourth Amendment violation premised on an illegal detention or seizure of a person must set forth a claim, plausible on its face, that the person was unreasonably "seized." *See generally Brower v. Cnty. of Inyo*, 489 U.S. 593, 598–99 (1989). This requirement extends to claims of excessive force. *See Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011).

"A person is seized within the Fourth Amendment's meaning when an officer 'by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied.'" *United States v. Jones*, 673 F.3d 497, 501 (6th Cir. 2012) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). A seizure can occur without actual physical restraint if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," a seizure may have occurred. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (internal quotation marks omitted). However—and critically for purposes of this case—in order to be seized a person must actually yield to a showing of authority. *Brendlin*, 551 U.S. at 254 ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."); *Hodari D.*, 499 U.S. at 625.

Thus, to show that a seizure occurred, one must demonstrate that "a reasonable person would have believed that he was not free to leave," and "[i]n addition [that] an individual . . . actually yield[ed] to the show of authority." *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010) (internal quotation marks omitted).

**A.**

The complaint fails to allege that Scozzari submitted to Miedzianowski's show of authority and, therefore, fails to allege that Scozzari was seized. Miedzianowski repeatedly ordered Scozzari to drop the stick, but Scozzari did not comply. In fact, he pulled the stick back and "cocked" it—the opposite of Miedzianowski's orders. Although Scozzari did "c[o]me down with [the stick]," he did not drop it as directed; rather, he reached into his waistband. Nowhere does the complaint allege, as Appellant claims, that Miedzianowski "physically made Scozzari stop." Not only does the complaint flatly state that Scozzari did not react in any way to the pepper spray, it also states that "Scozzari turned and walked into [his] cabin" after Miedzianowski claims that he drew his weapon and ordered Scozzari to put the knife back. Walking away from a police officer when repeatedly asked to put down a stick is not submission to authority.

Even if the complaint can be generously read to imply a moment of brief compliance or hesitation when Scozzari moved his hand towards his waistband before turning around and walking into the cabin, this action is insufficient to constitute submission to authority. *Compare United States v. Smith*, 575 F.3d 308, 314–16 (3d Cir. 2009) (finding no submission to authority where, after being instructed to place his hands on the police cruiser, the defendant initially "took two steps towards" the cruiser but then fled), *and United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir.

1994) (finding no submission to authority on the basis of defendant's "momentary hesitation and direct eye contact prior to flight"), *with United States v. Beauchamp*, 659 F.3d 560, 568 (6th Cir. 2011) (finding submission to authority where "[u]pon the officer's instruction, [Beauchamp] stopped and walked toward the officer, and again upon the officer's instruction, walked around the fence that separated them"), *and Johnson*, 620 F.3d at 691–92 (finding submission to authority where after being ordered to stop, Johnson stopped and "stood still at the passenger door").

Appellant also contends that Scozzari was seized when the officers "positioned themselves outside of the only exit from Scozzari's home, with weapons at the ready, and ordered Scozzari to come out with the intent to arrest him." Our precedent supports the proposition that when police position themselves outside a suspect's home and block the only exit, order a suspect to come outside, and the suspect does so, there has been a seizure. *United States v. Saari*, 272 F.3d 804, 808 (6th Cir. 2001). And at least under some circumstances, police presence outside a suspect's home can constitute a seizure, even where the suspect does not leave his home in response to officers' demands. In *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002), for instance, we found that a suspect who had barricaded himself in his own home for hours was seized because "the police surrounded the house and paraded an armored vehicle in front of the . . . house" and thereby "succeeded in restraining [the suspect's] liberty to leave his home." *Id.* at 506. It did not matter that the suspect did not submit to authority by leaving his home; he was effectively restrained by the extended presence of police who had surrounded his home. *Id.* Nothing in *Saari* or *Ewolski*, however, supports a finding of seizure without submission to authority; indeed, both Supreme Court precedent and our precedent require it. *Brendlin*, 551 U.S. at 254; *Johnson*, 620 F.3d at 690.

The complaint does not allege facts sufficient to demonstrate that Scozzari submitted to the officer's authority while in his home. The complaint alleges only the following:

> According to McGraw, with the Chief standing off to the southwest, and with his taser at the ready, McGraw pounded on the door shouting "Open up. Police". There is no doubt that the purpose of the action was to get Scozzari out of his cabin and arrest him, not merely question him about the "shots fired" complaint.
>
> After [McGraw] bang[ed] on the door three times and shout[ed], *Scozzari opened the door* and, according to McGraw, had weapons in his hands. McGraw admits that in addition to banging on the door, he also kicked it in order to push it open to see what Scozzari was doing inside. He successfully pushed it open a bit. Although the Chief denied any damage, the door jamb was in fact broken.

R.1 ¶¶ 31–32 (emphasis added). Thus, according to the complaint, the only action that Scozzari took was to open the cabin door. Even assuming that Scozzari opened the door in response to the officers' orders—which the complaint does not explicitly allege—the mere allegation that Scozzari opened the door without any information about what happened next is insufficient to state a plausible claim for relief. Nor does it matter that McGraw kicked the door to open it "a bit." To plead that McGraw kicked the door and that Scozzari opened it is "'merely consistent with'" Scozzari's submission to authority and "do[es] not permit the court to infer more than the mere possibility" that he was seized. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Twombly*, 550 U.S. at 557). Critically, the complaint fails to allege what happened *after* Scozzari opened the door, which is necessary to determine whether Scozzari ultimately submitted to the showing of the officers' authority.[3] By omitting what occurred immediately after Scozzari opened the door, the appellant has

---

[3]Of course, if Scozzari was in fact visibly armed when he opened the door, as the complaint indicates was the claim of McGraw, that could strongly suggest a lack of actual submission. But the odd drafting of the complaint makes it unclear whether Scozzari concedes this, and the complaint

alleged momentary compliance at best—thus failing to "'nudge[] [his] claim[] . . . across the line from conceivable to plausible.'" *See Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

*Ewolski* does not suggest otherwise. In *Ewolski*, police had "established perimeters around," "surrounded," and "paraded an armored vehicle in front of" the suspect's home. 287 F.3d at 498, 506. Here, despite appellant's assertions that the officers "did not provide Scozzari with a way out of his home," the complaint does not allege that Scozzari was unable to leave his home. The complaint only alleges that the two officers positioned themselves at a door of the cabin. *Cf. Saari*, 272 F.3d at 808 (finding seizure in part because officers positioned themselves in front of the *only* exit from defendant's apartment). Further, *Ewolski* involved a protracted hostage situation where police had surrounded the suspect's home for over twelve hours, a factor certainly relevant to our ultimate finding that the suspect had been seized in his own home. 287 F.3d at 498–500. In contrast, Scozzari opened the door immediately after McGraw banged on it three times.

Accordingly, the district court properly dismissed the illegal detention and unreasonable seizure claims.

**B.**

Appellant's excessive force claim—specifically that Miedzianowski's use of pepper spray was objectively unreasonable—was also properly dismissed. To make out an excessive force claim, a plaintiff must first allege that there was a seizure. It is only after a seizure has been alleged that the reasonableness of the force used becomes a relevant inquiry. *Livermore ex rel Rohm v. Lubelan*,

---

might be read to assert that he does not. At this stage in the litigation, we elect to focus on the language of the complaint that clearly embodies Scozzari's allegations.

476 F.3d 397, 406 (6th Cir. 2007) ("The proper approach under Sixth Circuit precedent is to view excessive force claims in segments. That is, the court should first identify the seizure at issue . . . and then examine whether the force used to effect that seizure was reasonable . . . ." (internal citations and quotation marks omitted)). The complaint fails to allege that Scozzari submitted to authority at any point during his encounter with the officers, *see* Part A, *infra*. Indeed, the complaint specifically alleges that Scozzari was not affected by the pepper spray at all. Thus, because the complaint fails to allege that Scozzari was seized, it also fails to allege that excessive force was employed.

**IV.**

For the reasons stated, we affirm the decision of the district court.