HELENE N. WHITE, Circuit Judge.
City of Clare Police Chief Dwayne Mied-zianowski and Officer Jeremy McGraw appeal the district court’s denial of their post-trial renewed motion for judgment as a matter of law on Plaintiffs[1] Fourteenth Amendment claim of deliberate indifference to serious medical needs, asserting that the district court erred in denying their qualified-immunity defense. We disagree and AFFIRM.
I. FACTS AND PROCEDURAL HISTORY
Trial testimony established that at 11:06 p.m. on September 18, 2007, a resident of the Lone Pine Motel called the Clare Police Department and reported that shots had been fired at a park near the motel. Chief Miedzianowski was dispatched to the scene at 11:06 p.m. and arrived at 11:12 p.m. Miedzianowski observed a man, later identified as William Scozzari, walking from the nearby VFW Hall carrying a flashlight and a cane. Miedzianowski testified that after Scozzari shined his flashlight in the direction of the police cruiser, Miedzianowski asked him to stop; Scozzari responded with an expletive and continued walking. Miedzianowski followed Scozzari to Cabin 17 of the Lone Pine Motel. Officer McGraw arrived at 11:21 p.m., after Scozzari entered Cabin 17. PID 2638-39, 3997.
The two Officers approached Cabin 17, knocked on the door, and announced “Police. Open Up.” Scozzari eventually opened the door and appeared to be clutching a knife and hatchet. McGraw fired a taser when Scozzari took a step forward, but missed Scozzari. Scozzari stepped back inside his cabin, the Officers kicked the door, and Scozzari opened the door, holding a hatchet and knife. The Officers screamed “Drop your weapons,” Scozzari moved toward McGraw, and Mi-edzianowski opened fire. The two Officers fired eleven shots, five of which hit Scozza-ri.
At 11:26 p.m., Miedzianowski reported shots fired and a suspect down. A Mobile Medical Response unit (MMR) was dispatched to the scene at 11:27 p.m. At 11:29 p.m., Miedzianowski instructs the dispatcher to call the MMR and have them stage at Pettit Park. The exact time the paramedics arrived at the park is not clear. At 11:34:50 p.m., Miedzianowski radioed dispatch to send in the ambulance. Paramedic Bryans reached Scozzari and began treating him sometime after 11:35 p.m., but was interrupted while police searched Scozzari for weapons. The length of the interruption is unknown, but at 11:37 p.m., MMR was treating Scozzari and at 11:57 p.m. MMR was en route to the hospital.
This case was previously before this court on Defendants’ interlocutory appeal of the district court’s pretrial denial of qualified immunity; a panel of this court affirmed. Scozzari v. Miedzianowski, 454 Fed.Appx. 455 (6th Cir.2012) (Scozzari I). The case proceeded to trial on Plaintiffs Fourth Amendment excessive-force claim and Fourteenth Amendment claim of denial of timely medical treatment. Over *847 Plaintiffs objection, the district court instructed the jury that Plaintiff had to prove that Defendants’ deliberate indifference proximately caused his death. The jury returned a verdict of no cause of action on both claims.
Plaintiff moved for a new trial. The district court granted the motion, limited to the denial-of-medical-treatment claim, on the ground that the proximate-cause jury instruction did not comport with the law of this circuit and prejudiced Plaintiffs case.[2]
Defendants moved for relief from the order granting a new trial, Fed.R.Civ.P. 60(b), and renewed their motion for judgment as a matter of law on Plaintiffs medical-treatment claim, Fed.R.Civ.P. 50(b), asserting that the jury was properly instructed on proximate cause and that, even if the instruction was erroneous, they were entitled to judgment as a matter of law because there was insufficient evidence for a jury to find that Defendants were deliberately indifferent to Scozzari’s medical needs. Defendants also argued they were entitled to qualified immunity because the evidence submitted at trial could not support a finding of the deprivation of a clearly established constitutional right. PID 2158. The district court denied Defendants’ motion, affirmed its ruling that the jury instruction was erroneous, and denied Defendants qualified immunity. PID 3148.[3] Defendants appealed and the district court stayed proceedings pending our disposition.
II. STANDARD OF REVIEW
Invocation of qualified immunity raises a question of law that we review de novo. Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir.1996). Government officials may invoke qualified immunity as a defense only “insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine if qualified immunity protects a government official from suit, courts engage in a two-step inquiry: (1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Morrison v. Bd. of Trs. of Green Twp., 583 F.3d 394, 400 (6th Cir.2009). Courts may “exer *848 cise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.” Pearson, 555 U.S. at 236, 129 S.Ct. 808; see also Aldini v. Johnson, 609 F.3d 858, 863 (6th Cir.2010).
We review de novo the district court’s denial of Defendants’ renewed motion for judgment as a matter of law under Rule 50(b). Loesel v. City of Frankenmuth, 692 F.3d 452, 461 (6th Cir.2012) (citing Radvansky v. City of Olmsted Falls, 496 F.3d 609, 614 (6th Cir.2007)). “The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.” Id. (internal quotation marks omitted). Judgment as a matter of law becomes appropriate when “a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.” Fed.R.Civ.P. 50(a)(1).
III. ANALYSIS
A. Jurisdiction
Because Defendants accept the facts in the light most favorable to Plaintiff and raise only issues of law, this court has jurisdiction under 28 U.S.C. § 1291. T.S. v. Doe, 742 F.3d 632, 635 (6th Cir.2014).
B. Deliberate Indifference
Defendants contend that the evidence at trial was insufficient as a matter of law to establish that they were deliberately indifferent to Scozzari’s serious medical need, and that their Fourteenth Amendment obligation was only to promptly summon medical care for Scozzari.
The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while being apprehended by police. Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (“[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.”); Phillips v. Roane Cnty., 534 F.3d 531, 539 (6th Cir.2008). To establish a violation of the right to adequate medical care under 42 U.S.C. § 1983, a plaintiff must show that the defendant acted with “deliberate indifference to serious medical needs.” Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir.2001) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A plaintiff need not show that the official acted “for the very purpose of causing harm or with knowledge that harm will result.” Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir.2001) (quoting Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); see also Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 660 (6th Cir.1994) (“Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain.”). “[DJeliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.” Farmer, 511 U.S. at 836, 114 S.Ct. 1970.
“Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiffs] health and safety.” Phillips, 534 F.3d at 539. A claim for deliberate indifference to serious medical needs has both objective and subjective components. Id. The objective component requires proof of a sufficiently serious *849 medical need. Farmer, 511 U.S. at 884, 114 S.Ct. 1970; Phillips, 584 F.3d at 539. To establish the subjective component, a plaintiff must “allege facts which, if true, would show that the official ... subjectively perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk.” Comstock, 273 F.3d at 703 (citing Farmer, 511 U.S. at 837, 114 S.Ct. 1970).[4] However, a plaintiff need not prove that the official acted “for the very purpose of causing harm or with knowledge that harm will result” if the official recklessly disregarded a known risk. Id. (quoting Farmer, 511 U.S. at 835, 114 S.Ct. 1970).
Where a deliberate-indifference claim is based on delay of medical care, a constitutional violation arises if the injury in question is “so obvious that even a layperson would easily recognize the necessity for a doctor’s attention,” and the resulting need for treatment was “not addressed within a reasonable time frame.” Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899-900 (6th Cir.2004).
Defendants contend that Plaintiff presented no evidence to indicate that they subjectively knew that additional weapons were in Scozzari’s pockets and consciously chose not to retrieve the weapons before the paramedics began attending to Scozzari. Defendants cite Williams v. City of Grosse Pointe Park, No. 03-73596, 2005 WL 2173686 (E.D.Mich., Sep. 6, 2005), aff'd, 496 F.3d 482 (6th Cir. 2007), to support their argument that since they summoned EMS within minutes of the shooting, there is no evidence of deliberate indifference. However, Williams is distinguishable because there were no intervening delays before medical aid was provided. There, the plaintiff was injured when one of the defendant officers fired shots' at the stolen vehicle the plaintiff was driving while fleeing police. Once the officer realized that the plaintiff had been shot, he reported “shots fired,” summoned EMS, and said to the plaintiff “EMS is coming ... just keep breathing man,” “you doing ok,” and “keep breathing, stay with me.” In addition, other officers arrived on the scene and attended to the plaintiffs medical needs and an ambulance arrived within seven minutes. Thus, in Williams the defendants were not deliberately indifferent to the plaintiffs medical needs. Id. at *2-3, *8.
We acknowledge that this is a closer case than some, and we recognize the problems faced by police officers confronted with the necessity of attempting to meet conflicting objectives such as securing the scene and summoning EMS, see Pierce v. Springfield Twp., 562 Fed.Appx. 431 (6th Cir.2014). However, in this case, a reasonable jury could find that the alleged conflicting objectives were carried out in a way that would not meet the standard for qualified immunity. The district Court correctly concluded that the *850 jury could have found Defendants were deliberately indifferent when they failed to search Scozzari for weapons between 11:26:09, when Miedzianowski called in that shots were fired, and 11:34, when Miedzianowski instructed dispatch to send in the ambulance that was staged nearby. PID 3638-41. And even when the paramedics began treating Scozzari, they were called off for a time after a Michigan State Police Trooper asked if Scozzari had been searched for weapons. PID 4227.
Further, a jury could conclude that Defendants disregarded the substantial risk of harm to Scozzari by engaging in activity unrelated to securing the area in preparation for medical personnel to enter. Instead of securing the area and searching Scozzari for weapons, McGraw brought neighbors out of their homes to view the fallen Scozzari with weapons in his hand. One witness also testified to seeing an officer enter Scozzari’s cabin and retrieve items, which the officer then placed near Scozzari. A jury could conclude that, in the face of such a serious medical need, Defendants were deliberately indifferent by delaying Scozzari’s access to medical treatment for non-medical reasons unrelated to securing the scene.
C. Qualified Immunity
Defendants assert they did not violate a clearly established right and are therefore entitled to qualified immunity, contending that testimony at trial established that it is standard protocol for emergency responders to stage off-site until given the all-clear from police to enter the scene, and that paramedic Winnie Bryans testified she would have staged off-site even if Miedzia-nowski had not directed her to do so. However this court has already addressed the issue:
Defendants argue that, even if their behavior amounted to deliberate indifference, they are entitled to qualified immunity because it was not clearly established when this incident occurred that failing to give medical responders immediate access to an injured detainee violates the Fourteenth Amendment. However, a constitutional right need not be expressly recognized to be clearly established. To the contrary, “ ‘general statements of the law’ are capable of giving clear and fair warning to officers even where ‘the very action in question has [not] previously been held unlawful.’” Smith, 430 F.3d at 776-77 (quoting Anderson v. Creighton, 483 U.S. 635, 640 [107 S.Ct. 3034, 97 L.Ed.2d 523] (1987)) (alteration in Smith). See also Anderson, 483 U.S. at 640[, 107 S.Ct. 3034] (“The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.”); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003) (“[A]n action’s unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.” (citing Hope v. Pelzer, 536 U.S. 730, 740-41 [122 S.Ct. 2508, 153 L.Ed.2d 666] (2002))). Reasonable officers would have known, based on this Circuit’s precedent, that the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance, but extends to ensuring that medical responders are able to access the victim without unreasonable delay.
Scozzari I, 454 Fed.Appx. at 467.
IV. CONCLUSION
For these reasons, we AFFIRM.

. Plaintiff Steven Scozzari is the brother of decedent William Scozzari. We refer to decedent William Scozzari as ''Scozzari” and to Steven Scozzari as “Plaintiff.”

. The district court noted that the prejudice to Plaintiff's case resulting from the erroneous instruction was evident from Plaintiff’s closing argument, "The judge has decided and you now know from the instructions yesterday, that with regard to our failure to provide medical treatment claim, we would have to prove that that failure substantially caused Mr. Scozzari’s death. We can’t prove that.” PID 3017.

. The district court explained:
It is undisputed that Scozzari's medical need was serious. He was shot five times and lay in a pool of blood. It goes without saying that Scozzari badly needed medical attention. A layperson would know that someone lying in a pool of blood after being shot needs medical treatment immediately in order to avoid death. And the Officers "do not dispute that they were aware that Scozzari had been shot.” Scozzari's obvious condition satisfies the objective requirement of the failure to provide timely medical treatment test. Further it is clear that the Officers were well-aware that Scozzari’s condition was serious.
The more complicated question is whether the Officers disregarded the substantial risk of serious harm to Scozzari's health.... Viewed in the light most favorable to Plaintiff, there is sufficient evidence to satisfy a reasonable jury that the Officers did not respond reasonably to Scozzari’s needs.
PID 3160.

. Our dissenting colleague faults us for not applying a "shocks the conscience” standard as derived from County of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and as applied by this court in Hunt v. Sycamore Community School District Board of Education, 542 F.3d 529, 535-36 (6th Cir.2008). But "conscience shocking” as an inquiry posed in Lewis is not self-defining; rather, it is to be addressed in context, 523 U.S. at 850, 118 S.Ct. 1708, as the dissent recognizes. When the facts are viewed in a light most favorable to Scozzari, each of the three inquiries in Lewis can be seen as favoring Scozzari: Scozzari had no voluntary relationship with the government; and Defendants had enough time to bring neighbors of Scozzari’s out of their homes to view Scozzari lying on the ground with weapons in hand, which they did without having searched Scozzari for weapons or secured the area in preparation for medical personnel.