NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0347n.06

Nos. 15-1643/1663

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STEVEN SCOZZARI, Personal Representative of the     )
Estate of William Christi Scozzari,                )
                                                   )
    Plaintiff-Appellant/Cross-Appellee,        )
                                                   )
        v.                                  )
                                                   )
CITY OF CLARE, a municipal corporation; KEN        )
HIBL,                                              )
                                                   )
    Defendants-Appellees,                      )
                                                   )
and                                                )
                                                   )
JEREMY McGRAW and DWAYNE                            )
MIEDZIANOWSKI, as agents of the Municipal          )
corporation, and as individuals, jointly and severally, )
                                                   )
    Defendants-Appellees/Cross-Appellants.     )

```
┌─────────────────────────────┐
│           FILED             │
│         Jun 23, 2016        │
│    DEBORAH S. HUNT, Clerk   │
└─────────────────────────────┘
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: COLE, Chief Judge; McKEAGUE and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Officers Dwayne Miedzianowski and Jeremy McGraw of the City of Clare Police Department fatally shot William Christi Scozzari outside his cabin on September 18, 2007. This is the fourth appeal arising from that tragic incident.

Scozzari's brother, as the personal representative of the Estate of William Christi Scozzari, brought this 42 U.S.C. § 1983 action against Miedzianowski, McGraw, the City of

Clare, and City Manager Ken Hibl claiming improper use of lethal force, as well as a subsequent

suit relating to defendant officers' conduct preceding the use of lethal force. The jury rendered a

verdict in favor of defendants on plaintiff's excessive force claim. Plaintiff moved for a new

trial, alleging that erroneous jury instructions caused the unfavorable verdict. The district court

denied the motion for a new trial. Finding no error requiring reversal in the court's jury

instructions or rulings, we affirm.

I.

Because the parties agree the district court's factual recitation is "for the most part,

accurate," we quote it at length here:

> William Scozzari lived alone in Cabin 17 at the Lone Pine Motel for years. The Lone Pine Motel is a collection of two-story buildings and stand-alone cabins offering overnight stays and extended lodging. A diagnosed schizophrenic, people thought Scozzari odd, but he kept to himself and generally did not cause trouble.
>
> During the evening of September 18, 2007, Chief Miedzianowski was doing paperwork at the Clare City Police Department. . . . [J]ust after 11:00 p.m., a call came in from a resident at the Lone Pine Motel that shots had been fired in a nearby park. Only a few minutes away, Miedzianowski went to investigate.
>
> At 11:12 p.m. Miedzianowski arrived near the Lone Pine, turned off his cruiser, and listened. He heard nothing, but noticed a man walking from the nearby VFW Hall carrying a flashlight and a cane. It was Scozzari, presumably on his way back to Cabin 17. Scozzari peaked [sic] Miedzianowski's curiosity when he shined his flashlight on Miedzianowski's police cruiser. Miedzianowski requested that Scozzari stop and talk, but Scozzari responded, "Fuck you, boy," and walked on. Suspicious, Miedzianowski got out of his car and followed on foot.
>
> They eventually walked through the Lone Pine parking lot in front of a number of freestanding cabins, including Scozzari's. Miedzianowski, in full police uniform, identified himself as an officer and ordered Scozzari to halt. Again he was met with "Fuck you." This time, Scozzari turned around, and only ten feet from Miedzianowski, cocked his cane back over his head as if to strike. Miedzianowski ordered him to drop the cane while backing away a few steps. He attempted to subdue Scozzari with pepper spray, but to no apparent effect. Bringing the cane down to his side, Scozzari then reached to his belt and began

removing what appeared to be a long knife. Miedzianowski drew his police revolver and retreated around a truck. He ordered Scozzari to "drop his weapons," but Scozzari did not comply. Instead, Scozzari turned, walked into Cabin 17, and closed the door behind him.

Meanwhile, Officer McGraw had been dispatched to the scene. . . . He found Miedzianowski in the parking lot in front of Cabin 17. Miedzianowski relayed that Scozzari had assaulted him and was holed up in a cabin. Miedzianowski, the ranking officer at the scene, told McGraw that Scozzari may have mental issues, but needed to be apprehended.

Miedzianowski and McGraw then converged on Scozzari's cabin. McGraw approached the right side of the door with his taser at the ready. Miedzianowski covered him from a few steps away with drawn revolver. McGraw knocked on the door and said, "Police. Open up." There was no response, so McGraw banged louder. Then the door opened, and Scozzari appeared clutching a knife and a hatchet in his hands. McGraw retreated as Scozzari took a step forward, and Miedzianowski yelled "Drop your weapons! Drop your weapons!" McGraw testified that he was scared he was going to die. He fired the taser, which launched harpoon probes at Scozzari, but the probes missed. Scozzari then stepped back inside his cabin and slammed the door.

Reacting quickly, McGraw kicked the door, but it did not move. Miedzianowski moved up and kicked the door as well, but it still did not fly open as they intended. Instead, Scozzari opened the door on his own. Brandishing a hatchet in his left hand and a knife in his right, Scozzari advanced on McGraw. Miedzianowski and McGraw both screamed "Drop your weapons!" One witness claimed he heard the phrase twenty or thirty times. As Scozzari approached, McGraw backed away. Although disputed, McGraw and Miedzianowski testified that McGraw fell to the ground, and that Scozzari moved as close as five feet, menacing McGraw with his blades. Scrambling backwards, McGraw threw his taser aside and reached for his gun. Miedzianowski, believing that McGraw was helpless and in very real danger, opened fire. Getting to his feet, McGraw brought his weapon to bear as well. Eleven shots were fired in all.

Five bullets struck Scozzari, at least one of which was fatal.[1]

## II.

Plaintiff filed the present action (*Scozzari I*) against McGraw, Miedzianowski, Hibl, and

the City of Clare in March 2008. In his amended complaint, plaintiff alleged McGraw and

---

[1]Although plaintiff contends McGraw successfully kicked the door open immediately before the shooting, he does not argue the district court clearly erred in instead finding that Scozzari opened the door.

Miedzianowski violated Scozzari's Fourth and Fourteenth Amendment rights by improperly using lethal force while effectuating arrest and by responding with deliberate indifference toward Scozzari's medical needs after the shooting. He sought to hold the City liable for failure to properly train the officers under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Defendants moved for summary judgment based on qualified immunity. In his brief opposing the motion, plaintiff introduced new Fourth Amendment claims related to defendants' pre-shooting conduct—without moving to amend his complaint a second time. *See Scozzari v. City of Clare*, 723 F. Supp. 2d 974, 977 (E.D. Mich. 2010). The district court denied defendants qualified immunity, and this court affirmed its decision. *Scozzari v. Miedzianowski*, 454 F. App'x 455 (6th Cir. 2012). Following supplemental briefing, however, the district court granted defendants summary judgment on the new claims that plaintiff conceded he had failed to include in his amended complaint.

Plaintiff filed a second action against McGraw and Miedzianowski in September 2010, (*Scozzari II*), asserting the same pre-shooting Fourth Amendment claims the district court rejected in *Scozzari I* as untimely. Specifically, he alleged: (1) that Miedzianowski illegally detained Scozzari during their first encounter; (2) that the officers' attempts to "force their way into Scozzari's cabin" amounted to an unreasonable seizure; and (3) that Miedzianowski's use of pepper spray was an act of excessive force. (*See Scozzari v. McGraw et al.*, No. 1:10-cv-13698 (E.D. Mich.)). Upon defendants' motion, the district court dismissed *Scozzari II* for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Scozzari v. McGraw*, 500 F. App'x 421, 423 (6th Cir. 2012). We affirmed that decision. *Id.* at 426.[2]

---

[2]In addition, defendants raised claim preclusion, also known as *res judicata*, as an affirmative defense in *Scozzari II*. (*Scozzari II*, No. 1:10-cv-13698). *See Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776–77 (6th Cir. 2009) ("The doctrine of res judicata prohibits not only

But while that appeal remained pending, plaintiff's lethal force and deliberate indifference claims proceeded to trial in *Scozzari I*.[3] With regard to the factors the jury should consider as part of the "totality of the circumstances" for the excessive force claim, plaintiff proposed the following instruction:

> Time-frame is a crucial aspect of the circumstances. Events that precede the shooting "in close temporal proximity" are properly considered in assessing the use of deadly force. The reasonableness, or not, of the actions of police officers prior to their use of deadly force are part of the total circumstances to be considered; did their actions unreasonably add to, or increase, the risk that force might be used.

The district court rejected this instruction as inconsistent with Sixth Circuit precedent. Instead, at the close of trial, it directed the jury that:

> To establish liability on this claim, Plaintiff must convince you by a preponderance of the evidence that the Defendants' use of force in shooting William Scozzari was objectively unreasonable in light of the totality of the circumstances that existed on September 18, 2007 at the Lone Pine Motel.
>
> * * *
>
> The reasonableness of the police officers' use of force must be judged from the information reasonably known to the officers at the time they acted and not with the benefit of hindsight. The concept of reasonableness allows for the fact that the police officers are often forced to make split-second decisions under circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation.
>
> The reasonableness inquiry is, however, an objective inquiry. The question is whether the Defendant police officers' actions are or were that of a reasonably prudent police officer in light of the facts and circumstances confronting them without regard to what their underlying intent or motivation may be. . . .

---

relitigation of all claims or issues which were actually litigated, but also those which could have been litigated in a prior action."); *see also Nevada v. United States*, 463 U.S. 110, 129–30 (1983). However, defendants did not argue claim preclusion in their Rule 12(b)(6) motion, and because we affirmed the district court's dismissal of *Scozzari II* based on plaintiff's failure to state a claim, we express no opinion on the propriety of plaintiff's attempt to bring *Scozzari II* on the same facts as *Scozzari I*.

[3]The court dismissed plaintiff's claims against Hibl before trial.

Reasonableness is determined by balancing the nature and the quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. Given the extreme intrusion caused by the use of deadly force, the countervailing governmental interests for its use must be weighty and only in rare circumstances may an officer seize a person by the use of deadly force.

Factors for . . . evaluating objective reasonableness include: The severity of the behavior the police officer was responding to; whether the suspect's behavior poses an immediate threat to the safety of the officers or others; whether he is actively resisting arrest or attempting to evade arrest by flight.

The number of lives at risk, the demeanor of the suspect, the size and stature of the parties involved, whether the suspect was fighting with the police, and whether the suspect was intoxicated or non-compliant.

The totality of contextual events preceding the use of force that are in close temporal proximity.

Deliberations began on July 3, 2012. "Late in the day" on July 5, "and then first thing in the morning" on July 6, the jury informed the court "that they believed that they were going to be unable to reach a unanimous decision . . . with respect to Section I.1 and II.1 [of the verdict form], which related to the questions on the use of lethal force by the officers in the Fourth Amendment question." While the court discussed the matter with counsel, the jury submitted a question:

We have a question regarding our instructions . . . . It's the source of our inability to agree on a verdict . . . . The instruction states, quote 'use of force in shooting William Scozzari was objectively unreasonable in light of the totality of circumstances,' unquote.

There is an irreconcilable difference amongst us whether excessive force was employed in the events preceding the shooting. If we have to consider the use of force in all of these preceding events, we think we will be unable to agree.

We are asking for clarification regarding the meaning of the word totality. Are we to consider the use of force in all the preceding events or only in the instance of the shooting?

Plaintiff's counsel moved for a mistrial. He reiterated his disagreement with the jury's "totality of the circumstances" instructions. While acknowledging *Scozzari II* remained pending on appeal, and agreeing that those claims concerned the officers' pre-shooting conduct, counsel argued that the court should "instruct the jury that if the officers create the circumstances which they later claim required use of lethal force, that's a relevant consideration to whether they acted as reasonably prudent officers and with objective reasonableness." The district court denied the motion. In reply to the jury, it stated:

> You have asked a question concerning our instructions on the use of force and the question whether it was objectively reasonable in light of the totality of the circumstances.
>
> The circumstances we are referring to are the circumstances at the door of Cabin 17 on September the 18th, 2007, and the officers' observance of William Scozzari and not the events that preceded that circumstance.

The court urged jurors to resume deliberations and "make every reasonable effort you can to reach unanimous agreement."

Later, the jury returned with another inquiry:

> Please provide us more clarification as we consider the events that occurred, quote, 'at the door,' unquote. Are we to consider the use of force involved in kicking in the door or after Mr. Scozzari has exited the cabin?

Over plaintiff's renewed objection, the court answered:

> While you may consider the events that occurred in close temporal proximity to the officers' decision to use lethal force in determining the objective reasonableness of the officers' actions, the question framed for you only relates to the officers' decision to use lethal force.

Following the court's response, the jury returned a verdict of no liability against Miedzianowski, McGraw, and the City of Clare. Per the request of plaintiff's counsel, the district court noted for the record "that the . . . time between [the jury's] receipt of the last response and the information that they reached a verdict, was in the approximate range of eight or nine minutes."

Plaintiff moved for a new trial shortly thereafter. According to plaintiff, the errors warranting a new trial included: (1) the court's refusal to give his requested jury instruction on the excessive force claim; (2) its "erroneous answers" to the jury's above-noted questions; and (3) its mistaken "proximate cause" instruction with regard to plaintiff's denial of timely medical assistance claim. *See* Fed. R. Civ. P. 59(a)(1)(A). The district court agreed with plaintiff on only the final point and ordered a new trial limited to that issue.

Defendants moved for relief from the court's order, and submitted a renewed motion for judgment as a matter of law.[4] *See* Fed. R. Civ. P. 50(a) & 60. Plaintiff responded, while also renewing his motion for a new trial on the excessive force claim, and moving for summary judgment on the medical assistance claim. Ultimately, the district court denied all pending motions and held fast to its original decision: that plaintiff receive a new trial only on the medical assistance claim. Defendants appealed. Once again, we affirmed. *Scozzari v. Miedzianowski*, 597 F. App'x 845 (6th Cir. 2015).

Finally, plaintiff appealed the denial of his motion for a new trial on the lethal force claim. Defendants responded and cross-appealed two prior orders denying defendants judgment on the pleadings. Plaintiff's new trial appeal and defendants' cross-appeals are now before us.

III.

A.

We review the district court's decision to deny plaintiff a new trial for abuse of discretion. *Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 245 (6th Cir. 2011). A district court abuses its discretion when it relies on clearly erroneous findings of fact,

---

[4]Defendants also moved to certify the order granting a new trial for interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted the motion, but we denied permission to appeal. *In re Miedzianowski*, 735 F.3d 383 (6th Cir. 2013).

improperly applies the law, or uses an erroneous legal standard. *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509–10 (6th Cir. 2013). "Similarly, to the extent the motion for a new trial was based on the court's refusal to give a requested jury instruction, the refusal is reviewed for abuse of discretion." *Id.* at 510. To the extent the motion was based on a challenge to the legal conclusions underlying the court's instructions, however, those conclusions are reviewed de novo. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 273–74 (6th Cir. 2009).

Proper jury instructions should "adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 641 (6th Cir. 2005) (internal quotation marks omitted). "A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Cummins*, 727 F.3d at 510 (quoting *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 373, 387 (6th Cir. 2008)). In other words, setting aside the verdict is warranted only when the instructions, "viewed as a whole, are confusing, misleading, or prejudicial." *Bridgeport*, 585 F.3d at 274 (internal quotation marks and brackets omitted).

B.

"Under § 1983, an individual may bring a private right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution," *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011), including the right to be free from excessive force during arrest, *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007). Apprehension by deadly force is subject to the Fourth Amendment's reasonableness standard. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Determining whether the use of force was

reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). Factors considered as part of the reasonableness standard include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The ultimate question is 'whether the totality of the circumstances justified a particular sort of search or seizure'"—in this case, seizure by lethal force. *Bletz*, 641 F.3d at 751 (quoting *Garner*, 471 U.S. at 8–9).

Plaintiff argues that the district court's refusal to give his requested instruction, as well as the law reflected in the chosen instruction, were erroneous. He contends the jury should have considered whether the officers' "conduct leading up to the use of deadly force . . . arguably caused or increased the risk that deadly force would be used" against Scozzari. Plaintiff is mistaken.

In our circuit, we "view excessive force claims in segments." *Livermore*, 476 F.3d at 406. Time-frame "is a crucial aspect" of segmentation. *Bletz*, 641 F.3d at 752. "We measure the reasonableness of the use of deadly force at a particular time based on an objective assessment of the danger a suspect poses *at that moment*." *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015) (internal quotation marks omitted) (emphasis in original). Consequently, "[w]here the events preceding the shooting occurred in close temporal proximity to the shooting, those events have been considered in analyzing whether excessive force was used." *Bletz*, 641 F.3d at 752.

In *Dickerson v. McClellan* for instance, the decedent's estate brought two § 1983 claims, one for the officers' violation of the knock-and-announce rule, and another for their use of excessive force once inside the home. 101 F.3d 1151, 1154 (6th Cir. 1996). Like plaintiff Scozzari, the *Dickerson* plaintiffs claimed "the officers should be held accountable for creating the need to use excessive force by their unreasonable unannounced entry." *Id.* at 1160. We disagreed. "Although both claims are premised on Fourth Amendment violations, the violation of the knock and announce rule is conceptually distinct from the excessive force claim." *Id.* at 1162. There is good reason, we explained, to "carve up the incident into segments and judge each on its own terms." *Id.* at 1161 (quotation omitted).

> The time-frame is a crucial aspect of excessive force cases. Other than random attacks, all such cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing.

*Id.* (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994)).

Plaintiff's proposed instruction—that the jury consider whether defendants' "actions unreasonably add[ed] to, or increase[d], the risk that force might be used"—runs contrary to *Dickerson* and the cases that follow it. *See, e.g.*, *Livermore*, 476 F.3d at 407 ("[a]pplying the segmented analysis . . . that *Dickerson* requires . . ."); *see also Chappell v. City of Cleveland*, 585 F.3d 901, 914 (6th Cir. 2009) (concluding "the events before the shooting are not a factor in determining whether the detectives had probable cause to use deadly force once they entered the bedroom"). "That is, the court should first identify the 'seizure' at issue here and then examine 'whether the force used to effect that seizure was reasonable in the totality of the circumstances,

not whether it was reasonable for the police to create the circumstances.'" *Livermore*, 476 F.3d at 406 (quoting *Dickerson*, 101 F.3d at 1161).

The district court's instructions properly focused on that question. First, the court "identif[ied] the 'seizure' at issue,"—i.e., the apprehension of Scozzari. *Id.* Then, as dictated in *Livermore*, 476 F.3d at 407, *Chappell*, 585 F.3d at 914, and *Dickerson*, 101 F.3d at 1161, the court asked the jury to examine whether "the force used to effect that seizure"—in this case, lethal force—was "objectively unreasonable in light of the totality of the circumstances that existed," "at the door of Cabin 17 on September the 18th, 2007, . . . and not the events that preceded that circumstance." "*Dickerson* instructs us to disregard these [preceding] events and to focus on the 'split-second judgments' made immediately before the officer used allegedly excessive force." *Livermore*, 476 F.3d at 407. The alleged excessive force plaintiff claims defendants used in this case was lethal force, and only lethal force. Plaintiff failed to raise claims concerning any excessive force used prior to the shooting until *Scozzari II*. Thus, in response to the jury's questions, the district court correctly instructed that "[w]hile you may consider the events that occurred in close proximity" to the deadly force, "the question framed for you"—as plaintiff chose to frame it—"only relates to the officers' decision to use lethal force." *See Bletz*, 641 F.3d at 752 (consideration of events occurring "in close temporal proximity to the shooting" are relevant to the question of excessive force).

Plaintiff contends that the court's instructions are out of step with *Claybrook v. Birchwell*, 274 F.3d 1098 (6th Cir. 2001), a case involving officers who mistook the armed decedent for a robber and shot him while he escorted his daughter-in-law outside of the store where she worked. *Id.* at 1100–02. Although the *Claybrook* court agreed that segmentation applied to the plaintiffs' excessive force claim, *id.* at 1105, the events on the night in question

were "not so easily divided," *id.* at 1104. "The defendants view those events in two segments, the first extending from the officers' decision to enter the F & J Market's parking lot and confront Claybrook through the initial firefight between the officers and Claybrook, and the second beginning when Claybrook ran around the market to hide behind the concrete steps and ending with the shots that killed him." *Id.* at 1104. They argued the court should overlook the first round of gunfire and consider only the second segment to determine the reasonableness of their conduct. Our court disagreed.

"[W]e instead conclude[d] that the evening's events [were] properly viewed in three segments: first, the officers' approach and confrontation of Claybrook; second, the initial firefight taking place in front of the market; and third, the shots fired after Claybrook's move to a position behind the concrete steps. Moreover, we conclude[d] that all events taking place in the second and third segments [were] material to our analysis." *Id.* at 1105. *Dickerson*, the court explained, required separation of the first segment, despite the fact that the officers approached Claybrook "in clear contravention of Metro Nashville Police Department policy." *Id.* The second and third segments, by contrast, had to be considered together because "the plaintiffs brought suit to contest *all* use of deadly force against their deceased father, not only the shot that took his life." *Id.* Regardless of whether the second round of fire was justified after Claybrook ran behind the steps and took aim at the officers, "the defendants cannot ignore the fact that the shots were fired at Claybrook twice on the night in question." *Id.*

How plaintiff believes *Claybrook* advances his claim to a new trial is unclear. Rather, we agree with the district court's assessment: "As applied here, *Claybrook* only reinforces the legal authority for segmenting the incidents occurring at the door of Cabin 17 from those that took place before. The Officers' approach to the cabin and their attempt to open the door were not

applications of deadly force, and so *Claybrook* does not require their consideration when determining whether the eventual application of deadly force was reasonable." The events in this case are also more easily divided than those in *Claybrook* because plaintiff divided them. Here, in *Scozzari I*, plaintiff disputes only defendants' use of lethal force against Scozzari. He failed to raise claims relating to their use of non-lethal force until the later-filed *Scozzari II*. Directing the jury to consider "the circumstances at the door of Cabin 17" where defendants actually initiated the use of deadly force, "and not the events that preceded that circumstance," is therefore consistent with *Claybrook* and the manner in which plaintiff presented his claims. We are hard pressed to find fault with the district court's reminder that "the question framed for you only relates to the officers' decision to use lethal force," when plaintiff did the framing.

Finally, plaintiff relies on our observation in *Kirby v. Duva*, that "[w]here a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive." 530 F.3d 475, 482 (6th Cir. 2008). He takes this statement out of context. While reviewing the district court's denial of qualified immunity, the *Kirby* court reached this conclusion after pointing out that "no one was ever in danger under the facts as presented by [the] plaintiffs." *Id.* Indeed, immediately before the above statement, the court remarked that "[e]ven in this final position . . . [the defendant officer] was still two feet to the [vehicle's] side, and thus not in its path." *Id.* *Kirby* stands only for the proposition that an officer should refrain from applying deadly force in the absence of a risk of harm to himself or others—it does not raise a question over the district court's segmentation.

IV.

For these reasons, we conclude that the district court did not abuse its discretion in refusing to give plaintiff's proposed jury instruction, or otherwise err in responding to the jury's

inquiries. In light of our affirmance, it is not necessary for us to address the issues raised in defendants' cross-appeals. *See Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 598 (6th Cir. 2013).

The judgment of the district court is affirmed.